**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

AMEX ASSURANCE COMPANY,

     Plaintiff,

         v.                          Civil Action No. AW-12-cv-2640

GARY VINCENT GIORDANO,

     Defendant.

---

## MEMORANDUM OPINION

Plaintiff AMEX Assurance Company (AMEX) brings this action against Defendant Gary Vincent Giordano, seeking declaratory relief under 28 U.S.C. § 2201 as well as alleging fraud and negligent misrepresentation. Pending before the Court is Giordano's Motion to Dismiss. Doc. No. 18. The Court has reviewed the motion papers and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons articulated below, the Court **DENIES** Giordano's Motion to Dismiss.

### FACTUAL AND PROCEDURAL BACKGROUND

The following factual allegations are drawn from the Complaint, motion papers, and attached exhibits. On July 27, 2011, Plaintiff AMEX issued a travel insurance policy (the Policy) to Defendant Giordano for a trip to Aruba scheduled for July 31, 2011 to August 5, 2011. Under the Policy, Giordano and his traveling companion, Robyn Lynn Gardner, were both identified as Covered Persons. In connection with this trip, Giordano faxed and mailed to AMEX Beneficiary Designation Forms for himself and Ms. Gardner. Ms. Gardner's form designated Giordano as her sole beneficiary and listed their relationship as "Partner."

1

The Policy included Accidental Death and Dismemberment coverage up to $1,500,000. To recover on these benefits, a claimant must provide both Notice of Claim and Proof of Loss. Furthermore, a Covered Person may not bring legal action to recover on the Policy until sixty days after AMEX has received Proof of Loss.

On August 2, 2011, Giordano reported Ms. Gardner missing to Aruban authorities, stating that she had disappeared while the two were snorkeling. At present, Ms. Gardner remains missing and there has been no official declaration of her death.

On August 4, 2011, two days after he reported Ms. Gardner missing to Aruban authorities, Giordano called AMEX. According to AMEX, Giordano inquired about the Beneficiary Designation Forms, but did not make a death benefits Notice of Claim with respect to Ms. Gardner. However, in February 2012, Giordano contacted AMEX again, seeking to recover death benefits on the Policy and arguing that he had made a Notice of Claim with respect to Ms. Gardner on August 4, 2011.

On June 14, 2012, Giordano filed a complaint against AMEX in the Circuit Court of Cook County, Illinois. The complaint alleges breach of contract (Count I) and seeks a declaration that AMEX has a duty to pay Giordano $3,500,000 (Count II). AMEX responded on September 17, 2012, by filing a motion to dismiss on *forum non conveniens* grounds and a motion to dismiss for failure to state claims. These motions are still pending, and AMEX has not filed any counterclaims or asserted any defenses in this Illinois action.[1]

In the meantime, Giordano sent a demand letter to AMEX in August 2012. AMEX interpreted the letter as a Notice of Claim and initiated the claims investigation process. As part of that process, AMEX requested that Giordano submit several supplemental claims materials,

---

[1] The status of the Illinois action is based on the parties' motion papers. The most recent was Giordano's Opposition, dated December 7, 2012. Doc. No. 24. The parties have not indicated—nor is the Court aware of—any additional developments in the state proceeding.

including Proof of Loss materials.  On September 21, 2012, AMEX indicated to Giordano that the information he had provided to date remained incomplete and detailed the additional materials required to fulfill the request.  According to AMEX, Giordano has not yet responded in full to AMEX's requests, including its request to provide a complete Proof of Loss.

On September 6, 2012, AMEX filed this diversity action for declaratory relief pursuant to 28 U.S.C. § 2201 (Counts I and II), fraud (Count III), and negligent misrepresentation (Count IV).  Specifically, AMEX seeks declarations that the Accidental Death and Dismemberment coverage of the Policy is void *ab initio* for lack of insurable interest and that no valid claim may be made under the Policy.  On October 29, 2012, Giordano filed this Motion to Dismiss.

## LEGAL ANALYSIS

As a preliminary matter, the Court addresses Giordano's erroneous conclusion that the Court lacks subject matter jurisdiction to hear this case.  According to Giordano, AMEX cannot invoke diversity jurisdiction because both parties are Maryland citizens.  Doc. No. 24 at 1.  Yet, Giordano provides no appropriate authority to support his argument that a corporation is deemed a resident of any state in which it does business.[2]  Rather, a corporation is a citizen of its place of incorporation and of the state where it has its principle place of business.  28 U.S.C. § 1332(c).  AMEX is an insurance company incorporated in Illinois with its principal place of business in Phoenix, Arizona, Compl. ¶ 16, while Giordano is a Maryland resident, *id.* ¶ 17.  Therefore, since the matter in controversy exceeds $75,000 and is between citizens of different states, the Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

Having established jurisdiction to adjudicate this case, the Court turns to Giordano's Motion to Dismiss.  Giordano argues that the Court should abstain from this action in deference

---

[2] Giordano cites 28 U.S.C. 1391(e)(1)(C) to support his proposition that AMEX is a Maryland citizen.  However, this statute concerns venue, not subject matter jurisdiction.

to the concurrent Illinois state court action.  In the alternative, he seeks to dismiss Counts II–IV of the Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Court holds that dismissal on either ground is unwarranted and thereby denies Giordano's Motion to Dismiss.

## I.      Motion to Dismiss Under Abstention Doctrine

It is well-established that our dual system of federal and state governments allows for parallel litigation.  The pendency of a state action is "no bar to proceedings concerning the same matter in the Federal court having jurisdiction."  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (quotations omitted).  This rule stems from the federal courts' "virtually unflagging obligation" to exercise their jurisdiction.  *Id; see also Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 206 (4th Cir. 2006) ("Federal courts have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not.").

As such, abstention from the duty to exercise federal jurisdiction is not the rule, but "an extraordinary and narrow exception."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14 (1983) (quoting *Colorado River*, 424 U.S. at 813).  It is justified only in the exceptional circumstances where denying a federal forum "clearly serve[s] an important countervailing interest."  *Id.*   In general, the circumstances appropriate for abstention are confined to three categories, all relating to federal-state comity or avoidance of constitutional decisions.  *See Colorado River*, 424 U.S. at 814–17.

### A.      *Colorado River* Abstention

In *Colorado River*, the Supreme Court held that—apart from traditional grounds for abstention—abstention is also proper for reasons of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."  *Id.* at 817

(quotations omitted). However, because *Colorado River* abstention does not rest on the weightier concerns of federal-state relations and proper constitutional adjudication, it is to be applied sparingly. *See id.* at 817–18.

The threshold question in determining whether *Colorado River* abstention is appropriate is whether there are parallel state and federal actions. If parallel suits exist, courts then balance six non-exclusive factors to determine whether exceptional circumstances compel abstention:

> (1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others; (2) whether the federal forum is inconvenient; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceedings to protect the parties' rights.

*Great Am. Ins.,* 468 F.3d at 207–08; *see also Moses H. Cone*, 460 U.S. at 15–16, 19–27; *Colorado River*, 424 U.S. at 818–19. In this analysis, the balance of factors is "heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone,* 460 U.S. at 16.

### 1.    Existence of Parallel Proceedings

A prerequisite to applying the *Colorado River* factors is that the state and federal proceedings must be parallel. The Court recognizes that the actions here arise from the same insurance policy and share some common factual allegations. However, an overlap in facts and legal theories does not automatically demand a conclusion that the suits are parallel. *See McLaughlin v. United Va. Bank,* 955 F.2d 930, 935 (4th Cir. 1992) ("While we agree that the federal and state actions have similar claims and draw on common events, they are not totally duplicative."). As the Fourth Circuit explained, "[t]he *Colorado River* doctrine does not give federal courts *carte blanche* to decline to hear cases within their jurisdiction merely because issues or factual disputes in those cases may be addressed in past or pending proceedings before

state tribunals." *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1074 (4th Cir. 1991) (quotations omitted).

Rather, "[s]uits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Great Am. Ins.*, 468 F.3d at 208 (quotations omitted).  While it is undisputed that the parties in the Illinois and federal actions are identical, Giordano contends that the suits also present the same issues.  *See* Doc. No. 18 at 9.  In the Illinois action, the issue is whether AMEX breached the Policy by failing to pay Giordano for Ms. Gardner's death.  In the federal action, the issues are whether the Policy is void for lack of insurable interest and whether Giordano misrepresented the nature of his and Ms. Gardner's relationship.

Giordano argues that AMEX's federal Complaint is simply an affirmative pleading of its defenses in the Illinois action.  Doc. No. 18 at 10.  According to Giordano, even AMEX's fraud and negligent misrepresentation claims are iterations of the same "uninsurable interest" defense asserted in the Illinois action.  *See id.* at 5–6.  As such, he maintains that AMEX's federal claims should have been brought in Illinois as counterclaims.  *See id.* at 10.  He reasons that had AMEX asserted such counterclaims, the state and federal actions would concern substantially the same issues and thus be parallel.

This "inverse" argument is problematic for several reasons.  First, in evaluating whether proceedings are parallel, a court must examine the state and federal actions as they currently exist, as opposed to how they might evolve over time.  *See Gannett Co., Inc. v. Clark Constr. Grp., Inc.*, 286 F.3d 737, 745 n.6 (4th Cir. 2002) ("[W]e must address whether abstention is appropriate based upon the current posture of the state court actions."); *R.J. Reynolds Tobacco Co. v. Market Basket Food Stores, Inc.*, No. 5:05CV253-V, 2006 WL 2270403, at *7 (W.D.N.C.

Aug. 7, 2006) (finding irrelevant that plaintiffs could amend state court pleadings if the federal court abstained and evaluating instead the current posture of the actions).

Here, AMEX has yet to answer the Illinois complaint with its defenses. *See* Doc. No. 21 at 31. The Court cannot consider defenses Giordano believes AMEX *may* raise in Illinois, particularly since AMEX can prevail against Giordano's breach of contract claim without raising issues of voidability, fraud, and negligent misrepresentation.

Second, counterclaims are not compulsory in Illinois. *See* 735 ILCS § 5/2-608(a) ("Any claim by one or more defendants against one or more plaintiffs . . . *may* be pleaded as a cross claim in any action, and when so pleaded shall be called a counterclaim.") (emphasis added). Therefore, AMEX need not file its federal claims as counterclaims. *See A. E. Staley Mfg. Co. v. Swift & Co.*, 419 N.E.2d 23, 27 (Ill. 1981) (holding policy against duplicative litigation does not require litigant to file counterclaim); *Combined Ins. Co. of Am. v. Certain Underwriters at Lloyd's London*, 826 N.E. 2d 1089, 1097 (Ill. App. Ct. 2005) (refusing to force litigant to seek counterclaim in foreign jurisdiction to gain complete relief).

Moreover, a failure to bring a permissive counterclaim does not preclude initiation of a federal suit. *See Wachovia Bank, Nat'l Ass'n v. Preston Lake Homes, LLC*, No. 5:09cv00112, 2010 WL 1872880, at *4 (W.D. Va. May 10, 2010) ("Because Virginia does not have a compulsory counterclaim requirement, [Plaintiff] acted well within its rights in bringing a separate suit in federal court . . . ."). Similarly, the fact that a federal claim is pleadable as a counterclaim in state court does not necessitate a finding that the proceedings are parallel. *See AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 522 (7th Cir. 2001) ("[T]he appellees point to no authority (nor have we found any) suggesting that a federal action is parallel to a state or foreign action for *Colorado River* abstention purposes when the claim upon which the federal

action is based is pleadable as a compulsory counterclaim in the other action."). In short, the fact that AMEX could theoretically assert counterclaims in Illinois is immaterial.

For the aforementioned reasons, the Court rejects Giordano's argument that AMEX's federal claims constitute nothing more than defenses or counterclaims that should be raised in Illinois, thereby rendering the state and federal actions parallel. Instead, the Court evaluates the proceedings as they currently exist and concludes that the issues are not substantially the same.

In the Illinois action, Giordano assumes the existence of an enforceable contract as the basis for his breach of contract claim and request for declaratory judgment. In contrast, the validity and enforceability of the Policy is in question in the federal action, based both on the alleged absence of an insurable interest as well as claims of fraud and negligent misrepresentation.[3] The Fourth Circuit has held that such a distinction demonstrates that issues in competing proceedings are not substantially the same. *See Gannett*, 286 F.3d at 742–43 (holding that suits were not parallel where federal action involved breach of contract issue and state lien action involved existence of contract issue).

Moreover, a major point of contention in the Illinois litigation is whether Giordano's breach of contract claim is premature. Giordano asserts that he has performed all that is required of him under the Policy. Doc. No. 18 at 4. AMEX, on the other hand, maintains that Giordano has failed to submit Proof of Loss and that litigation cannot commence until 60 days after AMEX receives such Proof of Loss. Doc. No. 21 at 28. As such, the Illinois court must adjudicate issues such as whether the August 4, 2011 conversation constituted a Notice of Claim and whether Giordano has submitted Proof of Loss to AMEX.

---

[3] In addition, AMEX seeks a declaration that no valid claim may be made under the Policy given: the terms, conditions and exclusions of the Policy; the facts and circumstances relating to the Policy placement; and/or the facts and circumstances concerning the Beneficiary Designation under the Policy.

However, adjudication of AMEX's federal claims requires the Court to determine whether Giordano and Ms. Gardner had a relationship giving rise to an insurable interest in Ms. Gardner's life. Similarly, the Court must examine whether Giordano intentionally or negligently misrepresented to AMEX that he and Ms. Gardner had such a relationship when he claimed that they were Partners.

Therefore, there is no guarantee that the issues litigated in the federal suit would necessarily arise in the Illinois suit and vice versa. Even if AMEX does not contest the Policy's validity or raise a defense or counterclaim alleging fraud or misrepresentation, it could still prevail in the Illinois action based solely on issues of timing and fulfillment of Policy requirements. Conversely, even if AMEX prevails in the Illinois suit, it would not necessarily prevail in the federal action. In such a situation, Giordano may still potentially recover on the Policy by fulfilling all Policy requirements.

Furthermore, "[a] difference in remedies is a factor counseling denial of a motion to abstain." *New Beckley*, 946 F.2d at 1074; *see Alfa Laval, Inc. v. Travelers Cas. and Sur. Co.*, No. 3:09CV733-HEH, 2010 WL 431301, at * 6–7 (E.D. Va. Feb. 5, 2010) (holding that proceedings were not parallel when actions litigated same core issues but sought different remedies). The case of *Balsly v. West Michigan Debt Collections, Inc.* is instructive on this issue. No. 3:11cv642-DJN, 2012 WL 628490, at *11 (E.D. Va. Feb. 27, 2012). Balsly asserted no claims in the state proceeding; consequently, any affirmative defenses he raised in the state action might "relieve him of liability, but [would] not entitle him to damages." *See id.* at *11. In contrast, Balsly's federal claims entitled him to statutory damages, actual damages, and attorney's fees. *See id.* The court found these differing remedies a significant factor in holding that the state and federal proceedings were not parallel. As in *Balsly*, the Illinois action may

relieve AMEX of liability.  Nevertheless, it does not currently allow AMEX the opportunity to recover damages for fraud and negligent misrepresentation.

In sum, the Court holds that the Illinois and federal proceedings are not parallel because the issues raised and remedies sought are not substantially the same.  *See New Beckley*, 946 F.2d at 1074 (holding that proceedings were not parallel because "[t]he parties in both actions are virtually identical, but the issues raised and the remedies sought are not").

### 2.       Balance of *Colorado River* Factors

Even when state and federal actions are parallel, only exceptional circumstances justify a federal court's avoidance of its "virtually unflagging obligation . . . to exercise [its] jurisdiction." *Colorado River*, 424 U.S. at 817; *see also Gannett,* 286 F.3d at 743–48 (declining to abstain from parallel federal action due to lack of extraordinary circumstances); *Banco Popular N. Am. v. Bean*, No. CCB 11-0661, 2011 WL 2746570, at *3 (D. Md. July 11, 2011) (same).  Assuming *arguendo* the existence of parallel suits, the lack of exceptional circumstances compels the Court's exercise of jurisdiction.

The first factor—whether the first court may assume *in rem* jurisdiction—does not support abstention.  The subject matter of the litigation does not involve property; thus, the Illinois court may not assume *in rem* jurisdiction to the exclusion of this Court.

Nor does the second factor—whether the federal forum is an inconvenient one—support abstention.  "[C]onvenience refers to the relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses."  *Holland v. Hay*, 840 F. Supp. 1091, 1100 (E.D. Va. 1994) (citing *Gulf Oil Corp. v. Gilbret,* 330 U.S. 501, 508 (1947)).

Apart from AMEX's incorporation in Illinois, there is little substantive connection between Illinois and the matters in dispute. Giordano fails to identify any evidence or witnesses located in Illinois, but instead relies solely on the fact that AMEX is subject to Illinois's jurisdiction. AMEX has no operations in Illinois. Accordingly, no documents concerning the Policy, nor employees knowledgeable about the Policy, are located in Illinois.

In contrast, Maryland provides more convenient access to sources of proof. At issue in this case is whether Giordano and Ms. Gardner were Partners as defined by the Policy. When the Policy was purchased, both resided in Maryland. Many of the individuals best able to testify as to the nature of their relationship also reside in Maryland. AMEX specifies Ms. Gardner's siblings, her friends, and the Guardian of her estate as such potential witnesses. Doc. No. 21 at 10–11. Furthermore, although Ms. Gardner's parents reside in Florida, they have ties to Maryland. *Id.* at 11. Therefore, they face less financial, physical, and emotional hardships if this matter were litigated in Maryland rather than Illinois. *Id.*

In response, Giordano argues that since the Illinois court has the power to issue commissioned depositions in other states, these witnesses can be deposed in Maryland and Florida. Doc. No. 24 at 4. Similarly, he maintains that the deponents are friendly, and thus subpoena power is not an issue. *Id.* However, even if witnesses are subject to compulsory process in Illinois, this does not alleviate the burdens and expenses associated with traveling to Illinois to testify.

The third factor—the desirability of avoiding piecemeal litigation—also weighs in favor of retaining jurisdiction. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Gannett*, 286 F.3d at 741. To warrant abstention, however, the exercise of jurisdiction "must create the possibility of

inefficiencies and inconsistent results *beyond* those inherent in parallel litigation, or the litigation must be particularly ill-suited for resolution in duplicate forums." *Id.* at 744 (emphasis added).

The Court finds nothing suggesting that exercise of its jurisdiction would result in dangers beyond those inherent in concurrent litigation. As previously discussed, although there is factual overlap between the Illinois and federal actions, the issues raised in the suits differ. *See supra* Part I.A.1. Therefore, the threat of duplicative litigation and inefficiencies is limited.

The risk of inconsistent results is also limited because Maryland substantive law will likely govern both the Illinois and federal actions. When sitting in diversity, a federal court is obligated to apply the choice of law principles of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In determining the governing law for contract disputes, Maryland courts follow the rule of *lex loci contractus*, which looks to the state where the contract was made. *See Commercial Union Ins. Co. v. Porter Hayden Co.,* 698 A.2d 1167, 1199 (Md. Ct. Spec. App. 1997). For insurance policies, the *locus contractus* is typically the state where the policy is delivered and the premiums are paid. *See id.* (quoting *Aetna Cas. & Sur. Co. v. Souras*, 552 A.2d 908 (1989)). Here, the Policy was delivered in Maryland and Giordano paid the premiums in Maryland. Doc. No. 21 at 10.

In Illinois, the choice of law rule for insurance contracts is the "most significant contacts" test. *Westchester Fire Ins. Co. v. G. Heileman Brewing Co., Inc.*, 747 N.E.2d 955, 961 (Ill. App. Ct. 2001). This test asks courts to consider the following factors: the location of the subject matter; the place of delivery of the contract; the domicile of the insured or of the insurer; the place of the last act to give rise to a valid contract; the place of performance; or other place bearing a rational relationship to the general contract. *Id* (quoting *Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co.,* 655 N.E.2d 842 (1995)).

Pursuant to the test, all but two factors favor Maryland.  First, the location of the subject matter of the Policy—*i.e.*, the location of the risk insured by the Policy—is Aruba, which weighs neither for nor against Maryland or Illinois.  Second, AMEX is a domiciliary of Illinois, which is the only factor that points to Illinois.  However, both Giordano and Ms. Gardner were residents of Maryland when the Policy was issued.  AMEX also delivered the Policy to Giordano in Maryland.  The place of the last act giving rise to an enforceable contract is Maryland, where the Policy was delivered and the premiums were paid.  *See Westchester Fire*, 747 N.E.2d at 550; *Emerson Elec. Co. v. Aetna Cas. & Sur. Co.,* 743 N.E. 2d 629, 640–41 (Ill. App. Ct. 2001). Finally, the place of performance is Maryland because any claims paid on the Policy would likely be paid in Maryland where Giordano resides.  *See Emerson Elec.,* 743 N.E. 2d at 641. Since Maryland has more contacts with the Policy than Illinois, the Illinois court will likely apply Maryland substantive law when interpreting the Policy.

Likewise, the fourth factor—the relevant order in which the courts obtained jurisdiction and the progress achieved in each action—also weighs against abstention.  The Illinois action was filed on June 14, 2012, and the federal action was filed on September 17, 2012.  Although the Illinois action was filed first, priority is not measured "exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."  *Gannett,* 286 F.3d at 747–48 (quoting *Moses H. Cone*, 460 U.S. at 21).

In the Illinois action, AMEX has filed motions to dismiss based on *forum non conveniens* and failure to state a claim.  Currently, the parties are conducting discovery related to AMEX's *forum non conveniens* motion.  According to AMEX, the parties dispute the appropriate scope of that discovery, on which the Illinois court has yet to rule.  Doc. No. 21 at 33.  Furthermore, opposition briefs on AMEX's motions to dismiss have not been filed and no hearing date has

been set.  *Id.*  In short, no progress has been made on the merits of the Illinois litigation.  *Id.* at

33–34.  Hence, the Court finds the state action has not progressed beyond that of the federal

action to the extent that abstention is favored.  *See Gannett*, 286 F.3d at 748 (holding that where

state and federal suits are proceeding at similar paces, this factor weighs against abstention).

The fifth factor—whether state law or federal law provides the rule of decision on the

merits—supports the Court's exercise of jurisdiction.  This factor justifies retention of federal

jurisdiction when an important federal right is implicated, especially when state proceedings may

inadequately protect the federal right.  *See Gannett*, 286 F.3d at 746 (citing *Moses H. Cone*, 460

U.S. at 26).

The converse is not true, however, insofar as the presence of state law does not typically

justify abstention.  Since federal courts routinely address questions of state law in diversity cases,

basing abstention on the presence of state law—without more—would undermine diversity

jurisdiction*. See Wachovia Bank, Nat'l Ass'n v. Preston Lake Homes, LLC*, No. 5:09cv00112,

2010 WL 1872880, at *4 (W.D. Va. May 10, 2010) (citing *Gannett*, 286 F.3d at 747).  Instead,

the presence of state law "can be used only in 'rare circumstances' to justify *Colorado River*

abstention." *Gannett,* 286 F.3d at 746 (citing *Moses H. Cone*, 460 U.S. at 26).  An example of

such rare circumstances is when retention of jurisdiction "create[s] needless friction with

important state policies . . . ." *See Alfa Laval*, No. 3:09CV733-HEH, 2010 WL 431301, at * 4

(E.D. Va. Feb. 5, 2010) (quoting *Gannett*, 286 F.3d at 746).

Although federal law is not implicated in this case, Giordano has provided no evidence

that there exists a novel question of state law that would be best decided by the Illinois state

court.  In fact, since it is likely that both forums will apply Maryland law to construe the Policy,

it is more reasonable that the Court retain jurisdiction so that it may apply the governing

Maryland law. *See Great Am. Ins.,* 468 F.3d at 209 (finding that where application of Virginia law is required and where there are no Virginia state proceedings, "Virginia's interest [is] better served by having the coverage issues decided by a federal court sitting in Virginia, rather than a state court sitting in Alabama").

Lastly, the sixth factor—the adequacy of the state proceedings to protect the parties' rights—counsels against abstention.  As noted above, the Illinois action does not currently protect AMEX's rights to recover damages and assert a lack of insurable interest given that counterclaims in Illinois are not compulsory and AMEX need not answer the Illinois complaint until resolution of its motions to dismiss. *See supra* Part I.A.1.  Thus, the Illinois action is not "an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Great Am. Ins.*, 468 F.3d at 208 (citing *Moses H. Cone*, 460 U.S. at 28).

In short, analysis of the *Colorado River* factors reveals that the instant case does not present the exceptional circumstances required to overcome the "strong presumption in favor of retaining federal jurisdiction." *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 465 (4th Cir. 2005).  Accordingly, dismissal is not warranted under *Colorado River* abstention.

### B.    *Brillhart/Wilton* Abstention

Rather than apply *Colorado River*, Giordano seeks dismissal under the abstention standard for declaratory claims, which was established in *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942) and *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ("*Brillhart/Wilton*").  This less demanding standard reflects the distinct features of the Declaratory Judgment Act and the greater discretion afforded federal courts in declaratory judgment actions. *See Wilton*, 515 U.S. at 286–87 (distinguishing the declaratory judgment context from other areas of law where concepts of discretion surface).

15

Although it is clear that the *Brillhart/Wilton* standard applies to complaints seeking only declaratory relief, the Fourth Circuit has not expressed a definitive view on the proper standard for mixed complaints, *i.e.*, complaints with both declaratory and nondeclaratory claims.[4] Nevertheless, Fourth Circuit jurisprudence suggests that *Brillhart/Wilton* does not apply in a mixed complaint scenario. *See Great Am. Ins.*, 468 F.3d at 211; *Chase Brexton,* 411 F.3d at 466–67. In *Chase Brexton*, the court reasoned that *Brillhart/Wilton* abstention is inapplicable because when a court is required to address nondeclaratory claims, the "entire benefit derived from exercising discretion not to grant declaratory relief is frustrated." *Id.* at 466.

Like the claims in *Chase Brexton,* AMEX's declaratory claims are "so closely intertwined" with its legal claims that judicial economy counsels against abstention. *See id.* at 466–67. AMEX asserts declaratory claims that the Policy is void *ab initio* for lack of insurable interest and that no valid claim can be made under the Policy given its terms and conditions. These claims are similarly connected to AMEX's fraud and negligent misrepresentation claims. For example, the Policy states that AMEX may deny benefits or terminate coverage in instances of fraud and misrepresentation.

Furthermore, even applying the *Brillhart/Wilton* standard, abstention would be unwarranted in this case. Under *Brillhart/Wilton* abstention, district courts balance four factors to determine whether to assert jurisdiction:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state court could resolve the issues more efficiently than the federal court; (3) whether the presence of overlapping issues of fact or law might create unnecessary entanglement between the state and federal court; and

---

[4] When dealing with mixed complaints, "courts have taken different approaches with respect to whether: (1) *Brillhart/Wilton* applies to all claims, (2) *Brillhart/Wilton* applies only to the declaratory claims, with the stricter *Colorado River* standard applying to nondeclaratory ones, or (3) *Colorado River* applies to all claims." *Beaufort Dedicated No. 5 Limited v. Bradley,* No. 1:11-CV-673, 2012 WL 3260325 (M.D.N.C. Aug. 8, 2012); *see also Great Am. Ins.,* 468 F. 3d at 210–11.

> (4) whether the federal action is mere procedural fencing in the sense that the action is merely the product of forum shopping.

*Great Am. Ins.*, 468 F.3d at 211.

First, Illinois does not have a strong interest in having the issues litigated in its courts. Giordano argues only that "[t]he corporate behavior of Illinois corporations is clearly important to the State of Illinois."  Doc. No. 18 at 9.  The fact that AMEX is incorporated in Illinois does not, on its own, signify that Illinois has a strong interest in this matter.

Nor is it evident that the Illinois state court could more efficiently resolve the issues.  In evaluating these efficiency concerns, courts focus on "whether the questions in controversy between the parties to the federal suit . . . can better be settled in the [pending state] proceeding." *Brillhart*, 316 U.S. at 495.  As noted above, the issues raised in the federal action—*i.e.*, the validity and enforceability of the Policy—will not necessarily be addressed in the Illinois action. *See supra* Part I.A.1.  The outcome of the Illinois action will not resolve all the issues between the parties.  *See id.*  For the same reason, the Court's exercise of its jurisdiction would not result in unnecessary entanglement given that the federal and state actions litigate different issues.

Finally, there is no indication that AMEX's federal suit is merely a product of forum shopping.  Giordano contends that the only reason AMEX filed this action is to avail itself of Maryland law, which rejects any presumption of death in an insurance policy.  Yet, Maryland substantive law will likely control in both forums.  *See supra* Part I.A.2.  Thus, Giordano's suggestion that AMEX filed suit in Maryland to benefit from favorable Maryland law is flawed. Accordingly, dismissal is not warranted under the *Brillhart/Wilton* abstention standard.

## II. Motion to Dismiss Under Rule 12(b)(6)

### A. Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the sufficiency of a plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, the complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Recently, the Supreme Court clarified the standard applicable to Rule 12(b)(6) motions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). According to these cases, Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (citations omitted). This showing must include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In a motion to dismiss, a court first determines which pleadings are entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 678–79. Assuming the veracity of these well-pleaded factual allegations, a court then determines if they plausibly entitle a plaintiff to relief. *See id.* In making this decision, a court must construe factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). A court should not, however, accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847

(4th Cir. 1979).  In sum, factual allegations must rise above the speculative level, based on the assumption that the allegations are true (even if doubtful).  *See Twombly*, 550 U.S. at 555.

## B.      Sufficiency of the Complaint

Giordano's 12(b)(6) Motion does little more than claim that the Complaint is insufficiently detailed and is merely a barebones recitation of the elements of each cause of action.  *See* Doc. No. 18 at 13–15.  This over-generalized conclusion discounts the Complaint's twelve pages of factual allegations, Compl. ¶¶ 1–12, 18–58, which were incorporated in each of the Counts, *id.* ¶¶ 59, 71, 74, 88.  The Court finds that AMEX's Complaint more than adequately articulates "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

### 1.      Declaratory Judgment (Count II)

AMEX seeks a declaration that "no valid claim may be made under the Accidental Death and Dismemberment Coverage of the Policy as it pertains to Ms. Gardner given: the terms, conditions, and exclusions of the Policy; the facts and circumstances relating to the Policy placement; and/or the facts and circumstances concerning the Beneficiary Designation under the Policy."  Compl. ¶ 73.  Giordano maintains that this Count is "so generalized . . . that it is impossible to understand what AMEX is alleging against Defendant."  Doc. No.18 at 13.  This contention ignores the Complaint's recitation of the specific terms, conditions, and exclusions that may bar any claims under the Policy.  Compl. ¶ 25–30.

### 2.      Fraud (Count III) and Negligent Misrepresentation (Count IV)

Count III alleges Giordano fraudulently misrepresented to AMEX that Gardner was his Partner in her Beneficiary Designation Form.[5]  Similarly, Count IV alleges Giordano negligently

---

[5] In Maryland, a plaintiff must establish the following elements of fraud: (1) the defendant made a false representation to the plaintiff; (2) the falsity was known to the defendant or was made with reckless indifference to

misrepresented to AMEX that he and Ms. Gardner were Partners.[6]   Contrary to Giordano's assertions, neither Count is a formulaic regurgitation of the elements of each cause of action. AMEX pleads that the statement that Giordano was Ms. Gardner's Partner is false.   Compl. ¶¶ 76–77, 90.   The Complaint further pleads that Giordano made the false statement intentionally— or at the very least, negligently—through the submission of Ms. Gardner's Beneficiary Designation Form.   *Id.* ¶¶ 33–36, 78.   According to AMEX, it relied on the information contained in the form submitted by Giordano and consequently suffered damages.   *Id.* ¶¶ 85–87, 93–95.   Based on these allegations, AMEX's claims of fraud and negligent misrepresentation are adequately pled.

Giordano argues AMEX's claims should be dismissed because that the Complaint does not allege that he made a false statement.   According to Giordano, AMEX fails to explain Ms. Gardner's signature on the Beneficiary Designation Form.   Doc. 18 at 14.   In other words, he could not have made any false representations since Ms. Gardner signed the form.

First, AMEX has not conceded that Ms. Gardner signed the Beneficiary Designation Form.   Doc. 21 at 24 n. 11.   This disputed fact cannot be resolved on a 12(b)(6) motion to dismiss, and the Court must construe factual allegations in the light most favorable to AMEX. *See Harrison,* 176 F.3d at 783.   Second, regardless of who signed the form, the Complaint alleges that Giordano knowingly submitted the form containing the false statement to AMEX via fax and U.S. mail.   Compl. ¶¶ 33–36.   Thus, Giordano is not insulated from liability.

---

its truth; (3) the misrepresentation was made for the purpose of defrauding the plaintiff; (4) the plaintiff relied on the misrepresentation and had the right to rely upon it; and (5) the plaintiff suffered compensable injury resulting from the misrepresentation.  *See Douglass v. NTI-TSS, Inc.*, 632 F. Supp. 2d 486, 493–94 (D. Md. 2009).

[6] In Maryland, a plaintiff must establish the following elements of negligent misrepresentation: (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement: (2) intending that the statement will be acted on by the plaintiff; (3) with knowledge that the plaintiff will probably rely on the statement which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the state; and (5) suffers damage proximately caused by the defendant's negligence.  *See Douglass*, 632 F. Supp. 2d at 493–94.

Giordano also contends that AMEX has not relied on any of his statements and has not suffered any damages. Doc. 24 at 3. However, AMEX issued the Policy based on the information provided in the Beneficiary Designation Form. Compl. ¶¶ 85, 93. AMEX had a right to rely the information Giordano submitted and was under no duty to investigate since nothing in Giordano's application should have put AMEX on notice. *See North Am. Specialty Ins. Co. v. Savage*, 977 F. Supp. 725, 731 (D. Md. 1997) ("Generally, insurers do not have a duty to investigate insurance applicants and are entitled to believe what an applicant claims to be true."). Moreover, AMEX has incurred costs in order to investigate and defend against Giordano's attempts to recover death benefits under the Policy. Compl. ¶ 86–87, 94–95. Accordingly, the Court concludes that Plaintiff's Complaint sufficiently alleges plausible claims for relief on Counts II, III, and IV.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Giordano's Motion to Dismiss. A separate Order will follow.

| February 21, 2013 | | /s/ |
| --- | --- | --- |
| Date | | Alexander Williams, Jr. |
| | | United States District Judge |